THE HONORABLE THOMAS S. ZILLY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CLAUDE BROWN,

        Plaintiff,

   vs.

KING COUNTY,

            Defendant.

Case No. 2:16-cv-01340-TSZ

DEFENDANT KING COUNTY'S
MOTION FOR SUMMARY
JUDGMENT

**NOTE ON CALENDAR:
NOVEMBER 17, 2017**

**ORAL ARGUMENT
REQUESTED**

## Table of Contents

I.   INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF FACTS ........................................................................................ 2

  A.  Mr. Brown's Career at Metro/Rail.......................................................................... 2

  B.  Mr. Brown's Allegations of Supposed Racial Discrimination and Retaliation. ................. 2

    1.  Denial of a Rail Supervisor-In-Training Position. .......................................... 3

    2.  Splitting Of the Acting Technical Trainer Position Among Applicants. ........................ 4

    3.  Serious Infraction For Violating Train Order. ................................................ 4

    4.  Denial Of Opportunity to Take Supervisor Exam Because of Incomplete Application
(2014)........................................................................................................... 5

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

C.   Mr. Brown's Allegations of Minor Incidents and Reprimands. ........................... 6

D.   Mr. Brown's Allegations of Age Discrimination. ............................................ 7

E.   Mr. Brown's Allegations of Disability Discrimination. ..................................... 7

**III. LEGAL STANDARD** ........................................................................................ **8**

**IV. ARGUMENT** ................................................................................................... **9**

A.   Plaintiff's ADA, ADEA, and Title VII Claims Should Be Dismissed Because They Were Not Included in a Timely EEOC Charge. .............................................................. 9

B.   Plaintiff's Racial Discrimination and Retaliation Claims Lack Merit. ............................... 11

   **1.**   Plaintiff Cannot Establish A Discrimination or Retaliation Claim For His Denied Supervisor Examination in 2012. ......................................................................... 13

   **2.**   Plaintiff Cannot Establish a Claim Related to the Splitting of the Acting Technical Trainer Position. ............................................................................................. 15

   **3.**   Plaintiff Cannot Establish a Claim Related to His Serious Infraction. .......................... 17

   **4.**   Plaintiff Cannot Prove a Claim for the Denial of an Incomplete Application. .............. 19

C.   PLAINTIFF'S AGE AND DISABILITY CLAIMS LACK MERIT. ............................... 20

   1.   Plaintiff's ADA and ADEA Claims Are Limited to His 2014 Supervisor Application— Which He Does Contend Was Age or Disability-Related. ................................................. 20

   2.   Plaintiff's ADA Claims Fail Because He Refused To Engage In the "Interactive Process" And, Regardless, Received Accommodations. ..................................................... 21

   3.   Plaintiff's ADEA Claim Fails for Lack of Evidence. .................................................. 23

**V.   CONCLUSION** ............................................................................................ **25**

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

**Table of Authorities**

## Cases

*Bovier v. Bridgepoint Educ./Ashford Univ.*, No. 317CV01052GPCJMA, 2017 WL 2465096, at *3 (S.D. Cal. June 7, 2017) ................................................................................. 23

*Briggs v. Nova Servs.,* 135 Wn. App. 955, 966, 147 P.3d 616 (2006) ........................................ 12

*Campbell v. State,* 129 Wn. App. 10, 22, 118 P.3d 888 (2005).................................................. 12

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) ..................................................................... 9

Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123-24 (9th Cir. 2000) ............................. 13, 17

Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000) ................................ 13, 17, 24

*Collings v. Longview Fibre Co.*, 63 F.3d 828, 834 (9th Cir. 1995).............................................. 20

*Connolly v. Entex Info. Servs., Inc.*, 27 F. App'x. 876, 878 (9th Cir. 2000) ............................... 21

*Cooper v. Cate*, No. 1:10-CV-899 AWI DLB, 2012 WL 1669353, at *9 (E.D. Cal. May 11, 2012) ....................................................................................................................... 14

*Crownover v. State ex rel. Dept. of Trans.,* 165 Wn. App. 131, 148, 265 P.3d 971 (2011)......... 12

Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) .................................................. 12

*Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1244 (11th Cir. 2001) .................................. 15

*Delgado v. Orchard Supply Hardware Corp.,* 826 F. Supp. 2d 1208, 1216 (E.D. Cal. 2011)..... 22

EEOC v. UPS Supply Chain Solutions, 620 F.3d 1103, 1110 (9th Cir. 2010)............................ 21

*Forkkio v. Tanoue,* 131 F. Supp. 2d 36, 45 (D.D.C. 2001)......................................................... 15

*Fuchilla v. Prockop*, 682 F. Supp. 247, 256 (D.N.J. 1987) ........................................................ 11

*Fulton v. State, Dep't of Soc. & Health Servs.*, 169 Wash. App. 137, 149, 279 P.3d 500, 507 (2012)....................................................................................................................... 13

*Griffith v. Schnitzer Steel Indus.,* 128 Wn. App. 438, 454, 115 P.3d 1065 (2005)...................... 16

*Hanson v. Boeing* Co., No. C14-1326 TSZ, 2015 WL 6449312, at *3 (W.D. Wash. Oct. 23, 2015) ....................................................................................................................... 10

DEF. KING COUNTY MOTION FOR SUMMARY JUDGMENT
(NO. 2:16-cv-01340-TSZ)

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

*Jefferson v. Time Warner Cable*, No. CV 11-5637-GW(CWx), 2012 WL 12887692, at *15 (C.D. Cal. July 23, 2012) ........................................................................................................ 22

*Johnson v. Stupid Prices, Inc.,* No. C07-1817 MJP, 2008 WL 4835876, at *5 (W.D. Wash. Nov. 6, 2008) ...................................................................................................................... 16

*Kangethe v. D.C.*, 206 F. Supp. 3d 661, 670 (D.D.C. 2016) ......................................... 15

*Kirby v. City of Tacoma,* 124 Wn. App. 454, 468, 98 P.3d 827 (2004) ........................ 12

*Leon v. Danaher Corp.,* 474 F. App'x 591, 592 (9th Cir. 2012) .................................... 20

*Manning v. Tacoma Pub. Sch.*, No. C06-5078 RBL, 2007 WL 2495138, at *17 (W.D. Wash. Aug. 30, 2007) .................................................................................................... 16

*McDaniels v. Grp. Health Co-op.,* 57 F. Supp. 3d 1300, 1314 (W.D. Wash. 2014) ........ 21, 22, 23

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) ............................. 11, 12

*McIntosh v. Geithner*, No. CV F 11–0054 LJO SKO, 2011 WL 2160919, at *16 (E.D. Cal. June 1, 2011) ......................................................................................................... 20

Miller v. Boys & Girls Clubs of Snohomish County, No. C15-2027-JCC, 2017 WL 897811, at *8 (W.D. Wash. Mar. 7, 2017) ................................................................... 12

*Modoc v. W. Coast Vinyl, Inc*., No. 3:10-CV-05007-RJB, 2011 WL 1363785, at *7 (W.D. Wash. Apr. 11, 2011) ...................................................................................................... 11

Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993) ......................................... 24

*Neukom v. Columbia Steel Casting Co.,* No. CIV. 05-924-JE, 2006 WL 1005067, at *11 (D. Or. Apr. 17, 2006) ..................................................................................................... 24

*Nowick v. Gammell*, 351 F. Supp. 2d 1025, 1036-38 (D. Haw. 2004) ......................... 11

*Pejic v. Hughes Helicopters, Inc*., 840 F.2d 667, 674–75 (9th Cir. 1988) .................. 10

*Percy v. State*, -- F. Sup. 3d --, 2017 WL 3973987, at *10 (S.D.N.Y. Sept. 7, 2017) ................. 11

*Ritchie v. United States,* 451 F.3d 1019, 1023 (9th Cir. 2006 ....................................... 9

Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012) ................... 21

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

*Sanchez v. Pac. Powder Co.*, 147 F.3d 1097, 1099 (9th Cir. 1998) ................................. 10

*Schlitz v. Burlington Northern R.R.*, 115 F.3d 1407, 1412 (8th Cir.1997) ................................. 24

*Scott v. Sears, Roebuck & Co.*, 395 F. Supp. 2d 961, 973 (D. Or. 2005) ................................. 24

*Stallcop v. Kaiser Foundation Hosp.*, 820 F.2d 1044, 1050-51 (9th Cir. 1987) ........................... 12

*Washburn v. Gymboree Retail Stores, Inc.*, No. C11–822RSL, 2012 WL 5360978, at *8 (W.D. Wash. Oct. 30, 2012) ................................. 21

*White v. Antelope Valley Coll.*, 461 F. App'x 532 (9th Cir. 2011) ................................. 14

*White v. California Cmty. Colleges*, No. CV 05-588 CAS (VBKX), 2010 WL 11507524, at *7 (C.D. Cal. Jan. 12, 2010) ................................. 14

## Rules

Fed. R. Civ. P. 56 ................................. 9

King County Code (K.C.C.) 12.18.060 ................................. 17

Washington Law Against Discrimination ("WLAD") ................................. 3, 11, 13

## Constitutional Provisions

42 U.S.C. § 1981 ................................. 11

DEF. KING COUNTY MOTION FOR SUMMARY JUDGMENT
(NO. 2:16-cv-01340-TSZ)

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

## I.   INTRODUCTION

Defendant King County hereby moves for summary judgment as to each of the seven causes of action in Plaintiff Claude Brown's First Amended Complaint (the "FAC").

Mr. Brown is a long-time employee of King County Metro ("Metro"), having worked in Metro's bus and rail divisions for over twenty years. In 2009, he began his current assignment as an operator of light rail trains in the Light Rail Division. Mr. Brown, who is African American, filed this lawsuit because he concluded—without meaningful evidence—that various interactions were the result of management's discriminatory or retaliatory animus. For example, he insists that numerous supervisors—some of whom are themselves African American—conspired to prevent him from obtaining a promotion, but he cannot articulate an evidentiary basis for that accusation. Dec. of Erin Overbey ("Overbey Dec.") Ex. A at 221:23-223:12 (Brown Dep.).

There are numerous reasons why each of Mr. Brown's claims must be dismissed. To begin with, three of Plaintiff's causes of action (arising under the Americans with Disabilities Act ("ADA"), Age Discrimination in Employment Act ("ADEA"), and Title VII) fail because Mr. Brown did not file a timely charge against King County with the Equal Employment Opportunity Commission ("EEOC"). But more fundamentally, Mr. Brown lacks evidence that the actions about which he complains were motivated by discrimination or retaliation. To the contrary, each of the County's actions was legitimately based on standard policy or a collective bargaining agreement.

In sum, Mr. Brown's discrimination and retaliation claims are based on his speculation that racial discrimination or retaliation was the real, hidden motive behind every negative interaction he has had with a supervisor or human resources professional. His unsubstantiated accusations are not enough to present triable issues of fact, and his claims should be dismissed on summary judgment.

DEF. KING COUNTY'S MOTION FOR SUMMARY JUDGMENT
(NO. 2:16-cv-01340-TSZ) - 1

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

## II.     STATEMENT OF FACTS

### A.  Mr. Brown's Career at Metro/Rail.

The substance of Mr. Brown's complaint begins on March 24, 2013, when he filed a complaint with the King County Office of Civil Rights ("OCR"). According to Mr. Brown, this complaint set off "a pattern of retaliatory behavior," with the result that he "was treated very differently from, and worse than, Caucasian employees who had the same or similar jobs." FAC ¶¶ 16-17.[1] Since at least 2013, Mr. Brown believes that he has been the subject of widespread persecution by many different people in various positions. According to Mr. Brown: "[I]t appears through my Metro career that someone is constantly trying to teach me how to bow my head and shuffle my feet properly." Overbey Dec. Ex. A at 170:21-23 (Brown Dep.). His allegations relate to a large, shifting cast of characters, including individuals throughout Metro management, as well as Human Resources, Disability Services, and other fields. For example, he testified that his allegations relate to "the whole set" of people at Metro, including, among others: Light Rail Manager Michael Avery, Rail Operations Superintendent Tom Jones, Rail Operations Training Chief Amanda Nightingale, Rail Operations Chief Terry Rhoads, Rail Operations Chief David Vestal, and Operations Chief Hollie Alejandria. *Id.,* at 22:1-23:16; 222:15-20. Although Mr. Brown contends that these individuals all discriminated against him for being African American, and/or retaliated against him for complaining about discrimination against African Americans, he omits from his Amended Complaint that three of them—Mr. Avery, Mr. Vestal, and Ms. Alejandria—are themselves African American. *Id.,* Ex. A at 241:2-12 (Brown Dep.); Dec. of Hollie Alejandria ("Alejandria Dec.") ¶ 4.

### B.  Mr. Brown's Allegations of Supposed Racial Discrimination and Retaliation.

According to Mr. Brown, his Metro colleagues have engaged in multiple discrete instances of racial discrimination and retaliation. FAC ¶¶ 18-32. Many of Mr. Brown's allegations relate to

---

[1] Mr. Brown previously made other complaints, but his FAC does not allege that they gave rise to retaliation.

DEF. KING COUNTY'S MOTION FOR SUMMARY JUDGMENT
(NO. 2:16-cv-01340-TSZ) - 2

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

nothing more than informal admonishments, while others are connected with Metro's hiring practices for supervisor and trainer positions. Relying on these allegations, Mr. Brown asserts claims based on disparate treatment for "racial discrimination" and "retaliation," under the Washington Law Against Discrimination ("WLAD") and 42 U.S.C. § 1981.[2] FAC ¶¶ 35-48; 59-70. He also brought a claim for retaliation, but not discrimination, under Title VII. *Id.* ¶¶ 56-58. The following is a summary of what appear to be the four main events which Mr. Brown alleges are at issue in this case:

1.   *Denial of a Rail Supervisor-In-Training Position.*

       In October 2012, Mr. Brown was one of 84 applicants to apply for a position of Rail Supervisor-In-Training ("RSIT"). He complains that he did not advance to the interview stage of the process. Overbey Dec. Ex. A at 218:2-12 (Brown Dep.); Ex. B, 2-5 (Pl's. Am. Resp. to Interrog. No. 2). Mr. Brown's application was rejected based on a "subject matter expert" review of the "qualifications and skills" set out in his application. *Id.*, Ex. C at 103:19-104:1, 109:11-110:2 (Nightingale Dep.). In particular, Mr. Brown's application was denied based on the objective "scoring criteria" relevant to the qualifications of the position. *Id.*, Ex. C at 103:24-104:1 (Nightingale Dep.). Using on a point system assigned to such categories as "Education," "Lead Experience," and "Computer Skills," Mr. Brown's application was scored at 187. *Id.,* Ex. D (Nightingale Dep. Ex. 5). Among qualified candidates, the scores ranged from a low of 68 to a high of 265. *Id.* Eighteen candidates scored higher than Mr. Brown, and only three of them were chosen for the position. *Id.* Ultimately, the three successful candidates were *all* minorities: John Kwesele (African American), Santiago Maciel (Hispanic), and Jeff Wachtel (Native American). *Id.*, Ex. A at 233:10-13, 492:3-10; 494:19-495:15 (Brown Dep.).

---

[2] The FAC does not plead other types of discrimination claims, such as disparate impact or hostile work environment.

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

2.  _Splitting Of the Acting Technical Trainer Position Among Applicants._

In June 2013, Mr. Brown applied to work as an Acting Technical Trainer on a temporary assignment. FAC ¶¶ 18-19. Although he was initially hesitant, Mr. Brown was appointed to (and accepted) this role in a temporary capacity on July 2, 2013. FAC ¶ 18; Overbey Dec. Ex. A at 236:5-10 (Brown Dep.) ("I wasn't sure I wanted to do [take the temporary position], because I was [disillusioned] by the people."). Six days after Mr. Brown began the assignment, however, he expressed his dissatisfaction with the hours and pay scale**,** resulting in him "losing money" of around $18 per day, as compared to his hourly pay as an Operator. _Id.,_ at 269:11-25.

On July 10, 2013, Chief Amanda Nightingale, one of the two managers originally responsible for appointing Mr. Brown to this temporary position, transitioned Mr. Brown out so that the other applicant, Kevin Gumke, could share the work of the temporary assignment. _Id.,_ Ex. C at 85:9-86:3 (Nightingale Dep.). Overall, the entire assignment was less than four weeks, eight days of which were staffed by Mr. Brown and the other two weeks by Mr. Gumke. FAC ¶ 19; Overbey Dec. Ex. C at 95:23-96:5 (Nightingale Dep.). Ms. Nightingale began thinking about splitting the position before she appointed Mr. Brown, but she did not actually notify Brown. _Id.,_ Ex. C at 71:2-72:4 (Nightingale Dep.); Ex. A at 245:13-25 (Brown Dep.); Ex. S. Mr. Brown now alleges that his removal from the temporary position was motivated by racial discrimination and retaliatory animus. FAC ¶ 19. But, there is no evidence to explain why Ms. Nightingale would have given him the appointment in the first place, had she harbored such an animus. There is no evidence that Ms. Nightingale learned about Mr. Brown's complaint (or discovered his membership in a protected class) _after_ she appointed him to this position.

3.  _Serious Infraction For Violating Train Order._

On October 30, 2013, Mr. Brown was given "notice of a serious infraction" for violating the requirement to call Link Center Control ("LCC") from the train he was operating, prior to departing a station. FAC ¶ 28. Mr. Brown admits that his failure to call LCC was in violation of

DEF. KING COUNTY'S MOTION FOR SUMMARY JUDGMENT
(NO. 2:16-cv-01340-TSZ) - 4

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

1   a Train Order governing the safety rules for the operation of his train; that the violation of a

2   Train Order is defined as a "Serious Infraction" in the union contract; and that the contract

3   describes the discipline for such an infraction as a one-day suspension. Overbey Dec. Ex. A at

4   278:12- 281:11, 295:24-296:1, 442:1-443:7, 444:8-23 (Brown Dep.); *Id.*, Ex. P, 4-5 (Brown Dep.

5   Ex. 43) (contract terms). Mr. Brown's union representative agrees that the discipline he received

6   was appropriate. *Id.*, Ex. F at 64:11-65:11 (Miller Dep.). Further, the supervisor who suspended

7   Mr. Brown for one day also suspended Caucasian employees for the same reason. Specifically,

8   Terry Rhoads, who suspended Brown for his Serious Infraction of violating a train order, also

9   recommended and imposed the suspension of Caucasian employees, Tony Lirot, (for one day for

10  his first-time Serious Infractions) Darrell Shay and Anthony Engrissi (each for two days) for

11  violating a train order. *Id.*, Ex. E at 58:7-10, 61:2-62:17 (Rhoads Dep.); Dec. of Terry Rhoads

12  ("Rhoads Dec.") ¶¶ 4-6, Exs. A-C. Mr. Brown's bold assertion that his one-day suspension

13  "could only have been issued because of his race" (FAC ¶ 28), lacks evidentiary support and is

14  contrary to the discipline records.

15  *4.   Denial Of Opportunity to Take Supervisor Exam Because of Incomplete Application (2014).*

16          In April 2014, Mr. Brown applied to take a supervisor exam, seeking to become a

17  supervisor trainee. Human Resources representative Ivette Martinez-Morales rejected his

18  because it did not include a completed "Work History" section, without which Ms. Martinez-

19  Morales could not determine whether he met the basic qualifications for the job. Overbey Dec.

20  Ex. G at 57:7-11, 69:25-71:23 (Martinez-Morales Dep.); Dec. of Ivette Martinez-Morales

21  ("Martinez-Morales Dec.") ¶¶ 4-6. Because "HR does the initial screen," Mr. Brown's

22  application was rejected solely on the basis that his application was incomplete, without further

23  review by supervisors. *Id.*

24          Mr. Brown does not dispute that his application was incomplete, but speculates that this

25  basis for denying his application could have only been "a pretext for the actual motivation" for

DEF. KING COUNTY'S MOTION FOR SUMMARY JUDGMENT
(NO. 2:16-cv-01340-TSZ) - 5

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

defendant's actions: racial discrimination." FAC ¶ 26. Mr. Brown actually admits that Ms. Martinez-Morales had no reason to retaliate against him—so he speculates that she must have been "instructed" to deny his application by a supervisor. Overbey Dec. Ex. A at 203:19-204:6; 206:6- 207:3 (Brown Dep.) ("Q: Other than being instructed to do so by someone else, is there any other information you know of that would you think cause Ms. Martinez-Morales to retaliate against you? A: No."). However, the undisputed evidence shows that no one instructed Ms. Martinez-Morales to deny his application; she testifies that she denied the application because of its technical defects. *Id.,* Ex. G at 57:7-23, 69:25-71:23 (Martinez-Morales Dep.). The application form expressly warned: "When applying for this position, you must thoroughly complete the EDUCATION and WORK EXPERIENCE sections of your application. **Failure to do so can result in disqualification from consideration**." Martinez-Morales Dec., Ex. A-3 (emphasis added). Martinez-Morales rejected other applications in the same process for similar defects. *Id.,* ¶¶ 4-6.

## C.  Mr. Brown's Allegations of Minor Incidents and Reprimands.

In addition to the incidents above, Mr. Brown also identifies multiple "reprimands" or "minor infractions" he received from supervisors. FAC ¶ 21. It would be impractical to discuss every such complaint asserted by Mr. Brown, but the following examples are illustrative:

*First*, Mr. Brown alleges he was admonished after he returned to work late on one occasion in 2013. *Id.* According to Mr. Brown's testimony, he was, in fact, late for his shift after a random, drug test, because "on the way back [from the test], I went to Arby's. And when I returned to work, I was two minutes late returning from the time they give." Overbey Dec. Ex. A at 201:15-202:8 (Brown Dep.). Nevertheless, his alleged "reprimand" amounted to nothing more than his supervisor telling him not be late next time. *Id.* ("Q: [W]hat happened? A: Nothing. He said don't go to Arby's when you take a drug test. Q: Okay. So did that show up as [a] miss or a late or anything in your file? A: No.").

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

*Second*, Mr. Brown complains that in 2014, a supervisor asked him to obtain his doctor's signature on a County form, to demonstrate that an absence was justified. FAC ¶ 31. The signature was expressly required by the applicable form. Overbey Dec. Ex. H (Brown Dep. Ex. 44); *Id.*, Ex. A at 452:14-17 (Brown Dep.). Mr. Brown had his doctor fax the signature, and the supervisor "never bothered me about that particular thing again." *Id.*, at 455:2-18. Mr. Brown agrees "there were no adverse consequences … no discipline… or anything like that." *Id.,* at 455:19-25.

Although Mr. Brown complains of other events, they follow a similar pattern in which there were legitimate reasons for the supervisors' decisions, no evidence of improper animus, and/or no adverse consequences. Many of Mr. Brown's complaints are also untimely, as they relate to events that happened many years ago. *Id.*, Ex. B, 2-5 (Pl.'s Am. Resp. to Interrog. No. 2).

### D.  Mr. Brown's Allegations of Age Discrimination.

Next, Plaintiff also cursorily asserts that he "was discriminated against during his employment with defendant because of his age," in violation of the ADEA. FAC ¶ 53. Mr. Brown has never identified any actual instance that he believes qualified as age discrimination: His interrogatory responses did not identify a single alleged adverse action that he contends was motivated by his age. Overbey Dec. Ex. B, 2-5 (Pl.'s Resp. to Interrog. No. 2).

### E.  Mr. Brown's Allegations of Disability Discrimination.

Finally, Mr. Brown asserts that King County refused to accommodate his disabilities, including COPD and "chronic mobility issues." FAC ¶¶ 22-24, 50. The accommodations Mr. Brown maintains should have been provided all relate to the facility where he reported for work: He alleges that he was not provided with parking closer to the facilities, a better maintained elevator, and better "ADA doors" (which allegedly were not always "functional"). Overbey Dec. Ex. B, 8-9 (Pl.'s Am.

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

Resp. to Interrog. No. 12). Plaintiff ignores, however, that the allegedly non-compliant facilities are owned and controlled by a third party, Sound Transit. Dec. of Diana Wurn ("Wurn Dec.") ¶ 3; Overbey Dec. Ex. Q at 14:13-15:5 (Avery Dep.).

However, King County did assist Brown with his difficulties at Sound Transit facilities. First, a disability specialist connected Mr. Brown with Sound Transit to assess whether the facilities were ADA-compliant, and offered to engage in an interactive process to identify individual accommodations. Overbey Dec. Ex. A at 323:3-324:17 (Brown Dep.); Wurn Dec. ¶¶ 4-5. Mr. Brown admits, however, that he *declined* to participate. *Id.* Second, Mr. Brown admits that his concerns were addressed through other channels anyway. On "some days," he was perfectly "physically able" to report to work. Overbey Dec. Ex A at 331:5-333:12 (Brown Dep.). On the "other days," Mr. Brown admits that people in "dispatch" would "accommodate me by bringing the stuff down to me," which they never once refused to do. *Id.* Mr. Brown would simply call the dispatch window and another employee would "bring me my radio and bring me my train orders and everything that I need downstairs [and] hand it to me"—which enabled him to avoid using the stairs. *Id.* In addition, when managers learned that elevators were out of order for an extended period of time, they relocated the dispatch area to the first floor of the facility so that Mr. Brown would not have to climb stairs to begin his shift. Alejandria Dec. ¶¶ 2-3.

Ultimately, King County is unaware of any reasonable accommodation that Mr. Brown needed from the County, but that was not provided. According to his doctor, he can perform all functions of his job without limitation and does not require any accommodations, aside from intermittent leave. *See* Overbey Dec. Ex. I (Hayes Dep. Ex. 24) (clearing Mr. Brown to work and opining, "no accommodation needed"); *Id.*, Ex. R at 81:10-82:22, 84:9-15 (Hayes Dep.).

### III.    LEGAL STANDARD

Summary judgment is proper if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex*

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

1    *Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56). A factual dispute is not

2    genuine if no reasonable jury could find in favor of the non-moving party. *See Ritchie v. United*

3    *States,* 451 F.3d 1019, 1023 (9th Cir. 2006). A principal purpose of summary judgment is to

4    "isolate and dispose of factually unsupported claims. . . ." *Celotex,* 477 U.S. at 323-34. Summary

5    judgment is appropriate against a party who "fails to make a showing sufficient to establish the

6    existence of an element essential to that party's case, and on which that party will bear the burden

7    of proof at trial." *Id.,* at 322.

8                                        **IV.    ARGUMENT**

9    **A.  Plaintiff's ADA, ADEA, and Title VII Claims Should Be Dismissed Because They Were**
     **Not Included in a Timely EEOC Charge.**

10

11          Plaintiff's complaint alleges that he filed a discrimination charge with the EEOC on March 6,

12   2015. FAC ¶ 10. Mr. Brown does appear to have filed a charge on that date—but he did *not* file it

13   against King County. Rather, the March 2015 charge identifies <u>Sound Transit</u> as the respondent,

14   located at 401 S. Jackson Street, Seattle. Overbey Dec. Ex. J. Sound Transit is a separate entity

15   from the County. Wurn Dec. ¶ 3. Because he named Sound Transit and its address, King County

16   never received the March 6, 2015 charge. Dec. of Sandra Newton-Hinton ("Newton-Hinton Dec.")

17   ¶¶ 2-3. The County only learned of the March 2015 charge during litigation. Overbey Dec. ¶20. Mr.

18   Brown filed a later charge, finalized on November 27, 2015, this time naming King County as the

19   respondent, located at a different address. Dec. of Candy Arata ("Arata Dec.") ¶¶ 3, 7-8, Ex. A-2.

20   This was the only charge King County had notice of at the time, which was received by King

21   County's Human Resources Department on November 30, 2015. *Id.,* ¶¶ 7-8; Newton-Hinton Dec. ¶

22   3. Both charges refer to one—and only one—discrete action: the alleged denial of an opportunity to

23   test for a supervisor training position in May 2014. Overbey Dec. Ex. J; Arata Dec. Ex. A-2. The

24   second charge also expressly states that the last instance of discrimination took place on December

25

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

8, 2014. Arata Dec. Ex. A-2. The conduct alleged in Mr. Brown's EEOC charge therefore occurred more than 300 days before he made the charge against King County.[3]

Notably, when King County received the November 27, 2017 EEOC charge, the County contacted the EEOC to raise the fact that the charge was untimely. In response, the EEOC notified the County that a substantive response to Mr. Brown's charge was not required, and the EEOC unilaterally dismissed the charge without a County response. Arata Dec. ¶¶ 5-6, Exs. B, C.

Based on the dates on the EEOC charges, Mr. Brown's claims under the ADA, ADEA, and Title VII—the Third, Fourth, and Fifth causes of action, respectively (FAC ¶¶ 49-58)—must be dismissed because he failed to make a timely EEOC charge. "Under the ADA, the ADEA, and Title VII, 'a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter.'" *Hanson v. Boeing* Co., No. C14-1326 TSZ, 2015 WL 6449312, at *3 (W.D. Wash. Oct. 23, 2015) (Zilly, J.). In Washington, where the complained-of discrimination also would violate state law, EEOC "[c]omplaints are timely if they are filed within 300 days of the alleged unlawful employment practice." *Id.,* at *3 (emphasis added). This 300-day requirement functions as a statute of limitations. *See Pejic v. Hughes Helicopters, Inc*., 840 F.2d 667, 674–75 (9th Cir. 1988); *see also Sanchez v. Pac. Powder Co.,* 147 F.3d 1097, 1099 (9th Cir. 1998) (failure to file an EEOC charge within 300 days "prevents a person from litigating the claim"). Mr. Brown's failure to make a timely EEOC charge against the County is fatal to his ADA, ADEA, and Title VII claims.

For the avoidance of doubt, the fact that Mr. Brown did file a claim against Sound Transit on March 6, 2015, and later sought to amend the charge to name King County, does not make the charge timely as to the County. Where ". . . parties are named in an amendment to [an EEOC] charge filed more than 300 days after the last allegedly discriminatory act, courts have rejected claims against these parties as time-barred." *Percy v. State*, -- F. Supp. 3d --, 2017 WL 3973987, at

---

[3] At minimum, 335 days elapsed between the last act on December 8, 2014 and the charge against King County metro on November 8, 2015.

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

*10 (S.D.N.Y. Sept. 7, 2017); *Fuchilla v. Prockop*, 682 F. Supp. 247, 256 (D.N.J. 1987) (denying claim based upon "untimely amendment ... nam[ing] ... new defendant" filed more than 300 days after incident of discrimination). Courts in the Ninth Circuit have only recognized narrow exceptions to this rule, none of which apply here. *See Nowick v. Gammell*, 351 F. Supp. 2d 1025, 1036-38 (D. Haw. 2004) (dismissing plaintiff's Title VII claim on summary judgment because no exception justified plaintiff's failure to name defendant on an EEOC charge).

Mr. Brown clearly knew or should have known that King County was the proper respondent for any employment-related allegations when he made the EEOC charge in March 2015: He has worked at King County since 1997. FAC ¶ 12. He knew his paychecks came from the County, not Sound Transit. Overbey Dec. Ex. A at 345:15-17 (Brown Dep.). And, he recently had made other complaints *naming King County as his employer*, such as his January 4, 2014 OCR Complaint which identified "King County" as the respondent and alleged retaliation at his workplace. *Id.*, Ex. K. Nevertheless, his initial EEOC charge made no allegations regarding the County, and the County never received notice of that charge. Newton-Hinton Dec. ¶ 3; Arata Dec. ¶¶ 7-8.

In sum, Plaintiff's causes of action arising under the ADA, ADEA, and Title VII should be dismissed because Mr. Brown did not file a timely EEOC charge against King County.

**B. Plaintiff's Racial Discrimination and Retaliation Claims Lack Merit.**

Mr. Brown's discrimination and retaliation claims under 42 U.S.C. § 1981, Title VII, and the WLAD should also be dismissed because they are not supported by sufficient evidence.

To prevail on a claim of racial discrimination, a plaintiff must first establish a *prima facie* case. *See, e.g.*, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Modoc v. W. Coast Vinyl, Inc.*, No. 3:10-CV-05007-RJB, 2011 WL 1363785, at *7 (W.D. Wash. Apr. 11, 2011) (Bryan, J.) (WLAD, §1981, and Title VII claims "follow[] the same principles"). This burden is satisfied by showing that: (1) the plaintiff is a member of a protected class; (2) he was qualified for the position and performed his job satisfactorily; (3) he experienced an adverse employment action; and (4)

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

similarly situated individuals outside his protected class were treated more favorably. *See McDonnell Douglas Corp.,* 411 U.S. at 802; *Kirby v. City of Tacoma,* 124 Wn. App. 454, 468, 98 P.3d 827 (2004). An adverse employment action must be a "tangible change in employment status such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Crownover v. State ex rel. Dept. of Trans.,* 165 Wn. App. 131, 148, 265 P.3d 971 (2011); *see also Davis v. Team Elec. Co.,* 520 F.3d 1080, 1089 (9th Cir. 2008) (an adverse action is one that "materially affect[s] the compensation, terms, conditions, or privileges of …employment"). The change must be more than an inconvenience—it must be something substantial, such as a reduction in workload or pay. *See Campbell v. State,* 129 Wn. App. 10, 22, 118 P.3d 888 (2005).

Similarly, to establish a *prima facie* retaliation claim, a plaintiff must demonstrate that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *See Miller v. Boys & Girls Clubs of Snohomish County*, No. C15-2027-JCC, 2017 WL 897811, at *8 (W.D. Wash. Mar. 7, 2017) (Coughenour, J.); *Briggs v. Nova Servs.,* 135 Wn. App. 955, 966, 147 P.3d 616 (2006). In the retaliation context, adverse actions "are actions by an employer that are harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination. For example, an adverse employment action could be the closing of the job opening to a plaintiff and the loss of opportunity even to compete for the position." *Miller*, 2017 WL 897811, at *8 (internal quotation omitted).

Importantly, to survive summary judgment, Plaintiff "must produce *specific* facts" which would support a *prima facie* case, "showing that there remains a genuine factual issue for trial." *Stallcop v. Kaiser Foundation Hosp.,* 820 F.2d 1044, 1050-51 (9th Cir. 1987) (emphasis in original). If the plaintiff does so with respect to either the discrimination or retaliation claim, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate,

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

nondiscriminatory reason for the challenged action." *Chuang v. Univ. of Cal. Davis,* 225 F.3d 1115, 1123-24 (9th Cir. 2000). If the defendant meets this burden, the plaintiff must then submit evidence to show that the defendant's proffered reasons for his termination are merely pretext for unlawful discrimination or retaliation. *Id.*; *see also Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1282 (9th Cir. 2000) (plaintiffs must "introduce evidence sufficient to raise a genuine issue of material fact" as to pretext); *Fulton v. State, Dep't of Soc. & Health Servs.*, 169 Wash. App. 137, 149, 279 P.3d 500, 507 (2012) (under the WLAD, plaintiff must offer evidence that the employer's "articulated reasons were pretext" and that discrimination "was, in fact, a substantial factor in its employment decision") (quotation omitted).

None of the minor incidents or reprimands alleged by Mr. Brown rise to the level of an adverse action because they had no significant consequences for his employment. Accordingly, below, King County focuses only on the four incidents that it anticipates Mr. Brown will try to rely upon as adverse actions during the limitations period.

### 1. *Plaintiff Cannot Establish A Discrimination or Retaliation Claim For His Denied Supervisor Examination in 2012.*

Although not pled in the FAC, and also beyond the three-year statute of limitations on his WLAD claim, Mr. Brown has raised the 2012 Rail Supervisor in Training ("RSIT") recruitment and application process—in which Mr. Brown was one of dozens of unsuccessful applicants—as a potential adverse action. Plaintiff cannot establish a *prima facie* case with respect to the denial of this application.

As Mr. Brown admits, the three successful candidates in the 2012 application process were *all* minorities: John Kwesele (African American), Santiago Maciel (Hispanic), and Jeff Wachtel (Native American). Overbey Dec. Ex. A at 233:10-13, 492:3-10, 494:19-495:15 (Brown Dep.). Thus, it would be farcical for Plaintiff to assert that individuals outside his protected class received more favorable treatment, as required to establish a *prima facie* case. *See, e.g., White v.*

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

*California Cmty. Colleges*, No. CV 05-588 CAS (VBKX), 2010 WL 11507524, at *7 (C.D. Cal. Jan. 12, 2010), *aff'd sub nom. White v. Antelope Valley Coll.*, 461 F. App'x 532 (9th Cir. 2011) (holding that African American plaintiff could not establish *prima facie* case of age or racial discrimination, where the candidate who was selected was both African American and older than the plaintiff).

Further, Mr. Brown has not shown that this decision was retaliatory. Nor could he. The Amended Complaint only alleges that he has been retaliated against for filing a <u>March 23, 2013</u> complaint (FAC ¶¶ 16-17), but the RSIT application process occurred in <u>October 2012</u>. Moreover, the evidence reflects that his application was denied (along with dozens of other applications) based on an objective scoring method. *Supra* II.B.1. Mr. Brown has offered no evidence that the denial of his application was a discretionary decision made by someone who harbored retaliatory animus against him, because of a discrimination complaint he had filed. His vague assertion of retaliation cannot establish a *prima facie* claim. *See, e.g.*, *Cooper v. Cate*, No. 1:10-CV-899 AWI DLB, 2012 WL 1669353, at *9 (E.D. Cal. May 11, 2012) ("Without actual knowledge of protected activity by the individual who causes an adverse employment action to occur, there can be no retaliation.")

Finally, Mr. Brown has not offered evidence to meet his burden to show that the County's legitimate basis for denying his application was pretext. Mr. Brown's application was denied because he scored lower than other applicants, using objective criteria relevant to the qualifications of the rail supervisor trainee position. In his 2012 supervisor application, out of the 84 candidates who applied, 18 candidates scored higher than Mr. Brown, and only the top 14 candidates in the process were selected to move on to the next round. *See Supra* II.B.1. Thus, the simple reason why Mr. Brown was not selected is that he had not "scored high enough on the review of the applications. . . ." Overbey Dec. Ex. C at 68:7-69:21 (Nightingale Dep.). Mr. Brown cannot establish that this legitimate and objective scoring system, which resulted in three

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

1  minority applicants *coming out on top*, was a pretext for racial bias—because no such evidence

2  exists.

3  **2.   *Plaintiff Cannot Establish a Claim Related to the Splitting of the Acting Technical Trainer***

4  ***Position.***

5        Mr. Brown cannot establish a *prima facie* case that his removal from a temporary training

6  position constituted discrimination or retaliation. He cannot show that this was an adverse action,

7  that the action was caused by his protected class or conduct, or that the County's legitimate basis

8  for this decision was pretext.

9        *First*, Mr. Brown cannot dispute that this position was only an *acting* position and

10  temporary in duration. Ms. Nightingale's email advertising the temporary position made clear

11  that it was "an acting detail to cover the duties of the Rail Technical Trainer." Overbey Dec. Ex.

12  L (Brown Dep. Ex. 16); *Id.*, Ex. A at 234:13-235:2 (Brown Dep.). Further, Mr. Brown contends

13  that the temporary position caused a "reduction in pay" from his operator role, by "$18.56" per

14  day. *Id.*, Ex A at 269:9-270:24; *Id.*, Ex. M (Brown Dep. Ex. 20). Thus, his removal from the

15  position cannot qualify as an adverse action. Courts have found that the removal of an employee

16  from a temporary position does not constitute an adverse action—and that is especially true here,

17  where the plaintiff made *more* money after he was transferred back to his permanent position.

18  *See Davis v. Town of Lake Park, Fla.,* 245 F.3d 1232, 1244 (11th Cir. 2001) (finding no adverse

19  action upon removal of employee from temporary position because it did not cause any

20  economic injury); *Kangethe v. D.C.*, 206 F. Supp. 3d 661, 670 (D.D.C. 2016) ("As a general

21  matter, failure to appoint an individual to a temporary position is usually not sufficient to

22  constitute an adverse action."); *Forkkio v. Tanoue*, 131 F. Supp. 2d 36, 45 (D.D.C. 2001) (absent

23  other "materially adverse consequences," removal from a temporary position found not to be an

24  "adverse action").

25

DEF. KING COUNTY'S MOTION FOR SUMMARY JUDGMENT
(NO. 2:16-cv-01340-TSZ) - 15

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

*Second*, even if Mr. Brown's removal had been an adverse action, he cannot establish that he was treated differently *because of* his race or protected conduct. Ms. Nightingale, who was one of two supervisors responsible for appointing Mr. Brown to the assignment initially, also made the decision to "split" the role between him and the other applicant. Overbey Dec. Ex. C at 71:2-72:4 (Nightingale Dep.). The fact that Ms. Nightingale was *both* the person who appointed Mr. Brown to the temporary position, and the one who removed him a few weeks later, creates an inference that her actions were not discriminatory or retaliatory. *See, e.g.*, *Griffith v. Schnitzer Steel Indus.*, 128 Wn. App. 438, 454, 115 P.3d 1065 (2005) ("To prevail, the employee must also present sufficient evidence answering an obvious question: if the employer is opposed to employing persons with a certain attribute, why would the employer have promoted such a person in the first place?") (quotation and brackets omitted). If Ms. Nightingale had intended to discriminate or retaliate against Mr. Brown by removing him from the temporary trainee position, she would have had no reason to appoint Mr. Brown to that role in the first place— particularly because there is no evidence that she learned of any complaint filed by Mr. Brown *between* the time when she appointed him, and the time when she allegedly removed him. The only reasonable inference was that the decision to split the temporary role was based on reasons other than discrimination or retaliation. *See, e.g.*, *Johnson v. Stupid Prices, Inc.*, No. C07-1817 MJP, 2008 WL 4835876, at *5 (W.D. Wash. Nov. 6, 2008) (Pechman, J.) (defendant was entitled to summary judgment on plaintiff's retaliation claim, in part because plaintiff could not "rebut the same actor inference"); *Manning v. Tacoma Pub. Sch.*, No. C06-5078 RBL, 2007 WL 2495138, at *17 (W.D. Wash. Aug. 30, 2007) (Leighton, J.) ("where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action.").

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

*Finally*, there was a legitimate reason for Ms. Nightingale to split the position between Mr. Brown and Mr. Gumke. Her testimony reflects that splitting the temporary role was viewed as "a good way to provide developmental opportunity to employees." Overbey Dec. Ex. C at 74:21-75:7 (Nightingale Dep.). Plaintiff has no evidence to show that this legitimate reason for splitting the role was pretext. This is an independently sufficient reason for finding that this incident does not give rise to a discrimination or retaliation claim, as a matter of law. *See Chuang*, 225 F.3d at 1124 (plaintiff must demonstrate that the employer's legitimate reasons are pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence") (quotation omitted).[4]

### 3.   *Plaintiff Cannot Establish a Claim Related to His Serious Infraction.*

In 2013, Mr. Brown received a "notice of a serious infraction" and a one-day suspension because he failed to call Link Center Control ("LCC") prior to departing Beach Hill Station, as required by a Train Order. Once again, Plaintiff cannot establish a *prima facie* case as to this incident. He cannot show that the one-day suspension was caused by discrimination or retaliation, nor that the County's legitimate basis for the suspension was a pretext.

Mr. Brown admits that his failure to call LLC violated a Train Order governing the safety rules for the operation of light rail trains. Overbey Dec. Ex. A at 278:12- 281:11 (Brown Dep.). The requirement to call LLC was important; its purpose was to prevent collisions during a time when it was necessary to run both Northbound and Southbound trains on the same track. *Id.* Mr.

---

[4] On January 4, 2014, Mr. Brown filed a Complaint with OCR relating to the splitting of the temporary position. Overbey Dec. Ex. K, 1-2. On December 4, 2015, OCR found "reasonable cause to believe" that Mr. Brown's removal constituted an "unfair employment practice" under King County Code (K.C.C.) 12.18.060. Overbey Dec. Ex. N. According to K.C.C. 12.18.060, a "reasonable cause" finding is made for the purpose of assisting the parties to reach a "conciliation" of their dispute. The OCR finding does not take into account the elements of Mr. Brown's causes of action under state or federal law, nor does it address whether Mr. Brown has sufficient evidence to raise a material dispute at trial. The report is insufficient to overcome summary judgment. *See Coleman*, 232 F.3d at 1284 (in EEOC context, a reasonable-cause determination is not sufficient evidence to avoid summary judgment).

---

DEF. KING COUNTY'S MOTION FOR SUMMARY JUDGMENT
(NO. 2:16-cv-01340-TSZ) - 17

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

Brown also admits that the violation of the Train Order was defined as a "Serious Infraction" in the union contract—which also provides for discipline of up to a one-day suspension. *Id.,* at 295:24-296:1 ("Q: Well, a serious infraction leads to a one-day suspension, right? A: Should."); 442:1-443:7 ("Q: . . . [I]t's my understanding that the failure to follow train orders was identified as a serious infraction by you. Is that also your understanding? A: In the contract, yes."); 444:18-23 ("yes, the contract will allow for, yes, a suspension" for a "first violation") (Brown Dep.). Mr. Brown's union representative likewise testified that his one-day suspension was in accordance with the express language in the union contract. *Id.*, Ex. F at 15:25-18:5 (Miller Dep.).

Plaintiff claims (without evidence) that, despite the express language of the order and the contract, someone of a different race would not have received the same discipline. The evidence is to the contrary. Terry Rhoads, who decided to impose the one-day suspension for Mr. Brown's Serious Infraction, similarly recommended suspending three Caucasian operators for their violation of train orders and another for opening a train door on the wrong side. *Id.*, Ex. E at 58:7-10, 61:2-62:17 (Rhoads Dep.); Rhoads Dec, Exs. A-C. And Mr. Brown's union representative agrees that similar incidents involving Serious Infractions have been treated the "same way", in terms of discipline. *Id.,* Ex. F at 15:25-18:5, 64:11-65:4 (Miller Dep.).

Mr. Brown also argues that "[t]his is a serious infraction because of my relationship with Mr. Rhoads," as the basis for claiming a retaliatory motive. *Id*., Ex. A at 286:24-287:1 (Brown Dep.). But Mr. Brown admits that his alleged problems with Mr. Rhoads predate his protected activity: "I had problems with Mr. Rhoads prior to filing the [2013 discrimination] complaint. And so some of the incidents I may speak of may have happened before I filed the complaint, or they may have happened after I filed the complaint." *Id.,* at 27:3-7. Thus, by Mr. Brown's own admission, there is no evidence to connect his 2013 complaint with his disputes with Mr. Rhoads.

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

Plaintiff's vague assertions of discrimination and retaliation are insufficient to prove causation or to overcome the legitimate explanation that his one-day suspension was based on his failure to abide by safety requirements.

**4.** _Plaintiff Cannot Prove a Claim for the Denial of an Incomplete Application._

Similarly, Mr. Brown cannot make out a _prima facie_ case regarding the denial of his application to take the 2014 supervisor exam. Mr. Brown's application was rejected during the "initial screen" by Human Resources because he failed to complete the "Work History" section of his application. _See supra_ II.B.4. Brown's Work History described none of his relevant rail experience and, without that information, Human Resources could not make a determination on whether Mr. Brown met the basic qualifications for the supervisor position. Accordingly, consistent with Metro policy and practice, she disqualified Brown. Overbey Dec. Ex. G at 57:7-21; 67:6-71:23 (Martinez-Morales Dep.); Martinez-Morales Dec., ¶ 3.

Plaintiff cannot show that Ms. Martinez-Morales's decision was discriminatory or retaliatory. By Mr. Brown's own admission, during the same 2014 supervisor recruitment process, "they" (the County) let "minorities become supervisors in mass," and the County did so "in a fair [way]." Overbey Dec. Ex. A at 535:21-536:2; 222:1-223:12 (Brown Dep.) (admitting "they allowed minorities to participate in and to pass" the application process). It was only, according to Mr. Brown, that they "eliminated me." _Id._ In fact, Mr. Brown himself was aware of successful minority applicants, including Kavin James (also African American), Hakko Daryoush, and Bigyan Pratap. _Id._ Additionally, Ms. Martinez-Morales testifies that she only passed forward complete applications for further review, and she denied other applications for similar reasons, namely, that the applicants provided incomplete information or failed to meet other established criterion. Martinez-Morales Dec. ¶ 4-6. Thus, Mr. Brown's application was treated in a manner that was consistent with other applicants.

DEF. KING COUNTY'S MOTION FOR SUMMARY JUDGMENT
(NO. 2:16-cv-01340-TSZ) - 19

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

Finally, for these same reasons, Ms. Martinez-Morales' testimony established a legitimate basis for the denial of Mr. Brown's application: His failure to complete the mandatory "Work History" section of his application. Mr. Brown cannot show that this legitimate basis was a pretext for retaliation or discrimination. *See McIntosh v. Geithner*, No. CV F 11–0054 LJO SKO, 2011 WL 2160919, at *16 (E.D. Cal. June 1, 2011) ("The plaintiff is required to produce 'specific, substantial evidence of pretext' to avoid summary judgment.") (quoting *Collings v. Longview Fibre Co.*, 63 F.3d 828, 834 (9th Cir. 1995).

For each of these reasons, Plaintiff cannot support a discrimination or retaliation claim based on the denial of his 2014 application.

## C.  PLAINTIFF'S AGE AND DISABILITY CLAIMS LACK MERIT.

Lastly, even if Mr. Brown had made a timely EEOC charge, his ADA and ADEA claims cannot survive summary judgment on the merits.

### 1.  *Plaintiff's ADA and ADEA Claims Are Limited to His 2014 Supervisor Application—Which He Does Contend Was Age or Disability-Related.*

Even if the Court overlooked the untimeliness of Mr. Brown's EEOC charge, his charge only relates to *one* incident which cannot form the basis for an age or disability claim in this case: The denial of Mr. Brown's May 2014 supervisor application. Arata Dec. Ex. A-2; Overbey Dec. Ex. J. In ADA and ADEA actions, a judicial complaint is limited to the scope of the EEOC charge and the subsequent investigation that can reasonably be expected to grow out of the charge. *See Leon v. Danaher Corp.,* 474 F. App'x 591, 592 (9th Cir. 2012) ("Allegations of discrimination not included in the plaintiff's administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge."). Here, there is no meaningful evidence that Mr. Brown's application to take the supervisor exam—which was the sole focus of both of the EEOC charges he filed—was denied based on his disability or age. Mr. Brown himself, when describing the incident in his interrogatory responses, only alleged that it was

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

motivated by "race/retaliation"—and not by his age or medical conditions. Overbey Dec. Ex. B, 2-5 (Pl.'s Resp. to Interrog. No. 2). This defect alone would be sufficient to dismiss Mr. Brown's ADA and ADEA claims.

2.   *Plaintiff's ADA Claims Fail Because He Refused To Engage In the "Interactive Process" And, Regardless, Received Accommodations.*

Further, even if the Court were to consider all of Mr. Brown's disability-related allegations—including those outside the scope of his EEOC charge—his claim would still fail.

To establish a *prima facie* case for failure to accommodate under the ADA, a plaintiff must show that (1) he is disabled; (2) he is qualified for the job in question and capable of performing it with reasonable accommodation; (3) the employer had notice of his disability; and (4) the employer failed to reasonably accommodate his disability. *McDaniels v. Grp. Health Co-op.,* 57 F. Supp. 3d 1300, 1314 (W.D. Wash. 2014) (Robart, J.) (citing *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012)). The ADA requires an employer to provide an effective, reasonable accommodation, but not necessarily the accommodation that the employee wants most. *See Washburn v. Gymboree Retail Stores, Inc.*, No. C11–822RSL, 2012 WL 5360978, at *8 (W.D. Wash. Oct. 30, 2012) (Lasnik, J.) ("The goal is to identify an accommodation that allows the employee to perform the job effectively, not to provide the job of the employee's choice.") (quoting *Connolly v. Entex Info. Servs., Inc.*, 27 F. App'x. 876, 878 (9th Cir. 2000)).

To determine a reasonable accommodation, both parties must engage in the interactive process. This process requires "(1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective." *EEOC v. UPS Supply Chain Solutions,* 620 F.3d 1103, 1110 (9th Cir. 2010). The employer has discretion to choose between effective accommodations. *Id.* at 1111. Importantly, "[t]he employer need only provide

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

enough accommodation to enable the employee to perform the essential functions of his job."
*McDaniels*, 57 F. Supp. 3d at 1314.

Mr. Brown's accommodation claim fails on the merits for multiple, independently sufficient reasons. *First*, his complaint ignores that all the accommodations he claims to have requested relate to building facilities that are owned by Sound Transit. *See supra* II.E. That fact alone is fatal to his facility-related accommodation claim. *See Delgado v. Orchard Supply Hardware Corp.,* 826 F. Supp. 2d 1208, 1216 (E.D. Cal. 2011) (ADA does not impose an obligation to "alter…property [the employer] does not own or otherwise control").

*Second*, Plaintiff's claim fails because he refused to engage in an interactive process. A Metro disability specialist tried to connect him with Sound Transit (which operated the facilities) to assess whether the facilities were ADA-compliant, and offered to engage in the interactive process after Sound Transit asserted ADA compliance. Overbey Dec. Ex. A at 321:19-324:17 (Brown Dep.); Ex. O (Brown Dep. Ex. 27). Mr. Brown declined. *Id.*, Ex. A at 324:7-17 ("Q: Okay. And so you indicated to her at the time that you were not interested in starting an interactive process to explore an individual accommodation during the meeting. Is that true? A: Yes."). He cannot establish an ADA claim, having rejected the interactive process. *See Jefferson v. Time Warner Cable*, No. CV 11-5637-GW(CWx), 2012 WL 12887692, at *15 (C.D. Cal. July 23, 2012) (plaintiff's "refusal to engage in the interactive process [] precludes him from claiming that Defendant violated the ADA by failing to provide reasonable accommodation.").

*Third*, Mr. Brown's allegation that he was refused an accommodation when the ADA doors and elevators were non-operational is belied by his own testimony. Overbey Dec. Ex. B, 8-9 (Pl.'s Resp. to Interrog. No. 12). He admits that he received an informal accommodation which eliminated his need for an elevator, because County employees brought his paperwork and other supplies directly downstairs to him. Additionally, his managers relocated the dispatch area to the first floor, thus eliminating the need to climb stairs. *See supra* II.E.; *see also, e.g.*, *Id.*, Ex. A at

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

331:5- 333:12 (Brown Dep.) ("Q: Was there ever a time when you called up and said, I can't -- I can't take the stairs today and they didn't bring your equipment down to you? A: No. Q: Was there ever a time when you said, I can't make the stairs today, and they marked you as late for some reason. A: No."). To the extent Mr. Brown complains that he could not walk upstairs, these accommodations reasonably addressed his concern. Mr. Brown has not shown any accommodation he needs and that has not been adequately provided. *See Bovier v. Bridgepoint Educ./Ashford Univ.*, No. 317CV01052GPCJMA, 2017 WL 2465096, at *3 (S.D. Cal. June 7, 2017) (dismissing ADA claim because plaintiff did not show "how Defendants failed to provide . . . reasonable accommodations").

Finally*, the undisputed <u>medical</u> evidence is that Mr. Brown was, in fact, able to work without the medical accommodations he now claims were needed. His physician testified that he can perform the functions of his job without limitation, and that he does not require any accommodations, aside from intermittent leave. Overbey Dec. Ex. I (Hayes Dep. Ex. 24) (clearing Mr. Brown to work and opining, "no accommodation needed"); *Id.*, Ex. R at 81:10-82:22, 84:9-15 (Hayes Dep.). Indeed, his physician communicated that information directly to King County contemporaneously. *Id.* And for years prior to this statement, his doctor made no recommended limitations concerning what Brown could do at work. *Id.*, Ex. T. Accordingly, Mr. Brown cannot satisfy his burden to "make some showing that [he] required an accommodation to perform the essential functions of [his] job on equal terms with nondisabled employees." *See McDaniels*, 57 F. Supp. 3d at 1314.

3.   *Plaintiff's ADEA Claim Fails for Lack of Evidence.*

To establish a *prima facie* age discrimination claim in the promotion context, a plaintiff must show (1) he belonged to the protected class, (2) he was qualified for the position for which he applied, (3) he was not promoted despite being well qualified, and (4) the employer filled the position with someone *sufficiently younger* to permit an inference of discrimination. *See Neukom*

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

1    *v. Columbia Steel Casting Co.,* No. CIV. 05-924-JE, 2006 WL 1005067, at *11 (D. Or. Apr. 17,

2    2006) (citing *Schlitz v. Burlington Northern R.R.,* 115 F.3d 1407, 1412 (8th

3    Cir.1997); *Coleman,* 232 F.3d at 1281).

4         Although cursorily pled in the Amended Complaint, Mr. Brown has not pointed to a single

5    instance where he believes he was discriminated against on the basis of age. In fact, Mr. Brown was

6    specifically asked in an Interrogatory to identify instances of "adverse employment action[s]" that

7    were "motivated by age"—and he did not identify a single one. Overbey Dec. Ex. B, 2-5 (Pl.'s

8    Resp. to Interrog. No. 2). In addition to the lack of an adverse action, Mr. Brown has not adduced

9    evidence that any supervisor harbored discriminatory animus because of his age. For example, he

10   does not claim that he was disparaged because of his age, although even that alone would not be

11   adequate to state a claim. *See Nesbit v. Pepsico, Inc.,* 994 F.2d 703, 705 (9th Cir. 1993)

12   (management comments, such as "[w]e don't want unpromotable fifty-year olds around,"

13   insufficient to establish *prima facie* case). In order to establish a *prima facie* case of age

14   discrimination, Mr. Brown would have to show, at a minimum, that he was treated less favorably

15   than a "substantially younger employee with equal or inferior qualifications"—and he has not even

16   tried to meet that standard. *See, e.g.*, *Scott v. Sears, Roebuck & Co.*, 395 F. Supp. 2d 961, 973 (D.

17   Or. 2005). Thus, even if the Court did not dismiss this claim based on Mr. Brown's failure to file a

18   proper EEOC charge against King County, the claim would still fail on the merits.

19

20   //

21

22   //

23

24   //

25

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819

## V.   CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in favor of Defendant King County on each of Plaintiff's causes of action.

DATED this 26th day of October, 2017.

DANIEL T. SATTERBERG
King County Prosecuting Attorney

By: */s/ Erin Overbey*
    Erin Overbey, WSBA #21907
    Kimberly Frederick, WSBA #37857
    Senior Deputy Prosecuting Attorneys
    Erin.overbey@kingcounty.gov
    Kimberly.frederick@kingcounty.gov
    Attorneys for Defendant King County

## DECLARATION OF FILING AND SERVICE

I hereby certify that on October 26, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification to the following:

**Darryl Parker**
**Civil Rights Justice Center, PLLC**
**2150 N 107th Street, Suite 520**
**Seattle, WA 98133**
dparker@civilrightsjusticecenter.com

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

DATED this 26th day of October, 2017 at Seattle, Washington.

*/s/ Shanna Josephson*
SHANNA JOSEPHSON
Legal Secretary
King County Prosecuting Attorney's Office

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County, Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-0430 Fax (206) 296-8819