THE HONORABLE THOMAS S. ZILLY

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CLAUDE BROWN,           )
                               )   Case 2:16-cv-01340-TSZ
        Plaintiff,      )
                               )   **PLAINTIFF'S TRIAL BRIEF**
    vs.                  )
                               )
KING COUNTY,         )
                               )
        Defendant.    )
_____ )

## I.    INTRODUCTION

This is an action regarding racial discrimination and retaliation brought by plaintiff Claude Brown under the Civil Rights Act of 1866, codified in 42 United States Code Section 1981, and under the Washington Law Against Discrimination ("WLAD"), RCW 49.60. Plaintiff seeks to redress discrimination and retaliation by his employer, defendant King County.

Since coming to rail in February of 2009, plaintiff was repeatedly denied promotional opportunities he was qualified for in part because of his race and also because he complained

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

1    both formally and informally about discrimination in the workplace. Plaintiff is accordingly

2    seeking compensation for lost wages and benefits and emotional distress caused by defendant's

3    actions.

4                    ## II.    BACKGROUND AND FACTS

5         Brown was first hired by King County Metro as a part-time transit operator in November

6    1997. He started working full time for the department in April 2000. In February 2009, Brown

7    began working for the King County Department of Transportation Division Rail Section, before

8    the new light rail system was opened to the public. After additional training as a Rail Line

9    Instructor, he trained new recruits, supervisors, managers, and anyone else seeking Rail

10   Certification on operations, safety, and department protocols.

11        Because of his work record, training, and role with Rail during its early development,

12   Brown believed that he would have an opportunity to move into a supervisory role at Rail.

13   Instead, defendant King County began promoting bus supervisors with no Rail-specific training

14   to Rail Supervisors, requiring Brown and other experienced Rail Operators to train them. Most of

15   the Rail Supervisors were Caucasian.

16                   ### A.    Brown is Denied Promotion in 2011.

17        In 2011, Brown applied for a Rail Supervisor in Training (RSIT) position. Several

18   employees, including Brown, were informed that they were not qualified to test for the RSIT

19   position. The reason Brown was given for this disqualification was that he had not driven a bus

20   in thirty months, despite the fact that he was attempting to test for a *rail* supervisory position,

21   and he had consistently been driving light rail trains over the relevant period. After protesting,

22   Brown and a handful of other minority employees were given less than 24 hours' notice to

23   prepare for the exam. They were not given any study materials, nor were they given any

PLAINTIFF'S TRIAL BRIEF - 2
No. 2:16-CV-01340-TSZ

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

classroom preparation time, which was administered by supervisors to other candidates to help prepare for testing. Five employees including Brown, all of whom were racial minorities, wrote a letter to Transit Operations Manager Jim O'Rouke to protest the insufficient time they were given to prepare for the exam.

After passing his written exam, Brown was interviewed for the RSIT position by Terry Rhoads and Amanda Nightingale, both of whom are Caucasian. Rhoads has a history of racial insensitivity and bias in favor of Caucasian employees, including having ignored complaints of racist remarks. Rhoads ignored Brown during the interview by taking a phone call, answering his door, and then having a conversation with someone who stopped by his office. Ultimately, Brown was denied promotion and the position was given to Hazel Henderson, a Caucasian woman who was not properly trained or qualified and did not know how to appropriately operate a train. Brown spoke directly with Rhoads about the discriminatory nature of the RSIT hiring process and filed a union grievance over the issue.

### B.    Brown is Denied Promotion Twice More in 2012 and Files KCOCR Complaint

In April 2012, a new RSIT position opened, and Brown again applied. He advanced to the testing stage and tested for the position. During the exam, a Caucasian woman stood over Brown's desk and watched him take the test, then physically stopped him from typing as she yelled for everyone to stop. Brown heard others continue typing but she did not stop them from doing so.  Rhoads informed Brown that no one had passed the computer test but would not show Brown his score. Brown later learned that, even though he and five others had passed the test, management decided to throw out the test results, disregarding them in their evaluations of candidates. When Brown interviewed for the position, the same Caucasian woman who had

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

interfered with his exam sat in on his interview, asked questions, then left without staying for the interviews of other candidates. Rhoads told Brown she was not needed for anyone else's interview.

Brown was again denied the promotion. In the testing process, he finished fourth behind three Caucasian employees: Brian Matthews, Justin Swanson, and Rachel Price. All three were hired as Rail Supervisors in Training. Matthews was the only applicant whose qualifications were equivalent to Brown's. Though Matthews was initially hired for the position, he quit after only a few weeks as an RSIT. Despite being contractually next in line, Brown was passed over and not hired as an RSIT.

In October 2012, three more RSIT positions were opened. Brown again applied for an open RSIT position. In December, he was informed that he had not been selected to test or interview for that position. King County employees Silvette Lee, Amanda Nightingale, Terry Rhoads, and Tom Jones applied a filter to candidate applications when selecting applicants to proceed to testing and interview that eliminated Brown's application even though he met each of the four required criteria to be eligible for the position. Nightingale admitted that this process was not blind, and she could see the names on the applications as she reviewed and scored them to determine who would proceed to the next level.

All three open RSIT positions were filled by external candidates, one of whom was John Kwesele, a former co-worker of Brown's who has a dark complexion and was born in Africa. Kwesele had previously worked for the King County Department of Transportation but had resigned because he had been turned down for promotion four times and did not see any promotional opportunities within the department. He began to work as an RSIT in February 2013 but soon began experiencing racial discrimination, which he repeatedly complained about to

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

higher-ups within the department. Kwesele was ultimately fired in April 2014 without having progressed from Rail Supervisor in Training to a full supervisory position.

In March 2013, Brown filed a new complaint with the King County Office of Civil Rights over being denied the RSIT position in both 2011 and 2012.

### C.     Brown's Assignment to Acting Technical Trainer is Revoked After Only Eight Days

On June 28, 2013, Brown was appointed to an Acting Technical Trainer position by Tom Jones. Assistant Superintendent of Organizational Development and Training Amanda Nightingale was not copied on the letter that notified Brown of his new position. That same day Nightingale emailed another candidate for the position, Kevin Gumke, that Brown had received this assignment and Gumke would not.

Brown began working as an Acting Technical Trainer on July 2, 2013 over the July 4th holiday weekend. On July 3, 2013, Brown's appointment was announced in the Light Rail Operations Bulletin. He was never given a working King County email address or a workstation. On July 8, 2013, Nightingale returned to work from a vacation and was openly hostile to Brown. She micromanaged him, was argumentative about his work hours, and eventually gave him menial tasks after telling him that his work displeased her without providing him any explanation or guidance. There is no written criticism of his work. On or about July 8, Nightingale sent an email to co-workers including Ivette Martinez-Morales, Tom Jones, and Terry Rhoads indicating that the Acting Technical Trainer position to which Brown had been assigned may not last until a new permanent technical trainer was hired. On July 10, 2013, after working with Brown in his new position for only two days, Nightingale told Brown that July 12, 2013 would be his final day in the position.

PLAINTIFF'S TRIAL BRIEF - 5
No. 2:16-CV-01340-TSZ

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

Nightingale replaced Brown with Kevin Gumke, a Caucasian employee she had previously said would not receive the position. Nightingale later claimed that she had intended to split the temporary assignment unevenly between Brown and Gumke, with Brown completing the first eight days and Gumke the remaining two weeks. Brown had not been informed of this alleged plan, and Union Steward Chuck Miller, General Superintendent of Operations Tom Jones, Rail Manager Michael Avery and Rail Operations Chief Terry Rhoads all confirmed that they too were unaware of Nightingale's intention to split the position until after Brown had been selected and notified that he would receive the assignment.

**D.**   **King County Office of Civil Rights finds Reasonable Cause to Believe Brown was Retaliated Against in his removal from ATT**

On January 9, 2014, Brown again filed a complaint with the KCOCR over racial discrimination in revoking his assignment to Acting Technical Trainer. On December 4, 2015, KCOCR found reasonable cause that KCDT violated King County Fair Employment practices through retaliating against Brown by removing him from the Acting Technical Trainer position because he had previously complained about racial bias and discrimination.

**E.**   **Brown Applies for Promotion in 2014 and is Again Denied Under The Pretext That His Application Was Incomplete.**

In April 2014 Brown once again applied for an RSIT position. The application process for this position was overseen by King County Human Resources Analyst Ivette Martinez-Morales. Martinez-Morales was heavily involved in defendant's response to Brown's 2013 KCOCR complaint prior to her review of Brown's RSIT application. She had collected documents relating to Brown's KCOCR complaint and coordinated extensively with Jim Meith, who was responsible for defendant's response. She generated and sent Meith a list of prior recruitments for which Brown had applied and gathered, organized, labeled and prepared a key

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

for the information and documents defendant submitted in response to Brown's KCOCR complaint.

On May 19, 2014, Martinez-Morales sent Brown a letter informing him that his application materials were incomplete and that for this reason he would not be considered for the RSIT position. Brown's 2014 application was the same as the applications he had previously submitted in 2011 and 2012, none of which had been considered incomplete. As such, on May 21, 2014 Brown emailed Martinez-Morales asking to be allowed to test for the position. He did not receive a reply. He emailed again the next day, attempting to get clarification on why his application was rejected. Martinez-Morales did not reply to Brown's phone calls or emails.

On June 2, 2014, having still not heard from Martinez-Morales, Brown reached out to supervisors to attempt to get clarification on his RSIT application. Jones and Rhoads responded that they were not involved in the decision. On June 10, 2014 Brown emailed Operations Chief David Vestal copies of his correspondence with Martinez-Morales. Vestal recommended in reply only that Brown contact the HR Analyst identified in the job posting, which was Martinez-Morales.

On July 4, 2014 Brown again emailed Martinez-Morales for clarification on the rejection of his application. On July 8, 2014, Martinez-Morales finally replied that she had been out of the office and reiterated only that his application was incomplete, without any further clarification.

Brown remains a rail operator for King County Department of Transportation; he has not been promoted since he began working for the Department's Division Rail Section in February, 2009.

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

### III.     ARGUMENT AND AUTHORITY

Brown is pursuing the following claims at trial: (1) that defendants violated federal and state law prohibitions against employment discrimination on the basis of race in denying him promotion to Rail Supervisor in Training between 2011 and 2014; (2) that defendants violated federal and state law prohibitions against employment discrimination on the basis of race in removing him from his Acting Technical Trainer assignment in July 2013; (3) that defendants violated federal and state law protections against retaliation by denying him promotion to Rail Supervisor in Training positions between 2012 and 2014 in whole or in part because he complained internally of racial discrimination and filed formal complaints with the King County Office of Civil Rights; and (4) that defendants violated federal and state law protections against retaliation by removing him from his Acting Technical Trainer assignment in whole or in part because he complained internally of racial discrimination and filed formal complaints with the King County Office of Civil Rights. As discussed below, there is ample evidence for a jury to return a verdict in Brown's favor on all of these claims.

### A.     Plaintiff was Discriminated Against because of his Race in Violation of the Washington Law Against Discrimination

The jury will be instructed that as they consider both the discrimination and the retaliation claims, the standard of proof is that Brown's race and/or retaliation must have been a substantial factor, rather than the "but for" factor, in defendant's decisions to deny plaintiff promotions and remove him from his temporary duty assignment. The plaintiff may prevail by showing that the racial discrimination was "a substantial factor" motivating the employment decision even though other factors also motivated the decision. In fact, plaintiff does not need to show that he would have been promoted in the absence of defendant considering his race or his

protected activity.

Under the WLAD, employers are prohibited from making employment decisions (including hiring or promotion decisions) based, even in part, on a protected characteristic, including race or retaliation. *See Mikkelsen v. Public Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 526 (2017). The WLAD prohibits employers from discriminating in terms or conditions of employment based on an individual's race or opposition to any practices forbidden by this chapter. RCW 49.60.180(2)-(3), 210 (1). Based on this chapter, Brown was discriminated against. Moreover, the WLAD does not require a demonstration of intentional discrimination. *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001).

Concerning evidence of discrimination, Brown offers extensive testimony and supporting evidentiary documents from non-white rail employees demonstrating that King County Rail management have a long and storied history of tolerating racially insensitive remarks and giving preferential treatment to its white employees. To counter this, King County points to non-white employees who have been promoted to supervisor-in-training positions. However, only one of those employees, John Kwesele, whom King County was forced to hire because of his test scores, actually shares plaintiff's race, and Kwesele never advanced to a full supervisory position. Kwesele also faced numerous instances of racial discrimination on the job, including racist degradation and dismissal of his complaints of racism by many of the same King County agents Brown complains about, and Kwesele was eventually terminated from his position a year later.

Despite plaintiff's substantial experience at rail, including as a trainer tasked with certifying new employees who went on to supervisory positions, his repeated applications for promotion have been denied. In 2011, he and other minority candidates were given only twenty-

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

four hours to prepare for their skills test. In spring 2012, his skills test was interfered with and he was not hired when Brian Matthews quit, despite having more rail-specific experience and having scored better any other candidate. In fall 2012, supervisors applied a metric to scoring candidate applications that prioritized formal education over knowledge of transit operations or experience as a trainer. The scoring system relied on qualitative interpretations of an applicant's listed job experience. Amanda Nightingale was responsible for assigning scores to applications and admits that she did not score applications blindly and could see plaintiff's name on his application when she scored it, ultimately eliminating him from the candidate pool. Institutional racism and ill will on the part of defendant employees because of plaintiff's consistent history of complaints against the unfair treatment he encountered were clearly motivating factors in defendant's decisions to overlook the plaintiff for advancement on the job.

**B.    Brown was Retaliated Against in Violation of the Washington Law Against Discrimination**

The WLAD protects employees engaged in statutorily protected activity from retaliation by their employer. *See* RCW 49.60.210. It provides: "It is an unfair practice for any employer, employment agency, labor union, or other person to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter".

Unlike the US Supreme Court, the Washington Supreme Court has categorically declared that "[t]he application of the 'but for' test is deemed unfair, as a matter of policy and social justice, in reaching a just result." *Allison v. Housing Authority of the City of Seattle*, 118 Wn.2d 79, 93-94 (1992). Because employers rarely will reveal they are motivated by retaliation, plaintiffs ordinarily must resort to circumstantial evidence to demonstrate retaliatory purpose.

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

*Vasquez v. State, Dep't of Soc. & Health Serv.*, 94 Wn. App. 976, 985, 974 P.2d 348 (1999). Proximity in time between the discharge and the protected activity, as well as satisfactory work performance and evaluations prior to the discharge, are both factors that suggest retaliatory motivation. *Id.* at 985. To prove a causal link, the plaintiff must provide evidence that the protected activity was a substantial factor motivating the adverse action. *Currier v. Northland Services, Inc.*, 182 Wn. App. 733, 746 (2014). "Thus, retaliation need not be the only reason or even the main reason ... but instead only be the reason that 'tips the scales'" towards the adverse action. *Id.*

In Brown's case, he complained directly to Rhoads, Jones and Nightingale on multiple occasions over the course of his employment that the hiring process for supervisory positions was racially discriminatory. These complaints occurred in-person, in writing over email and through the union grievance process, as Brown will show at trial.

Furthermore, Brown filed multiple formal complaints through the King County Office of Civil Rights. The HR Analyst who rejected his RSIT application in 2014 worked directly on defendant's response to one such complaint. Brown can present substantial documentary evidence and testimony that confirms that, contrary to Ms. Martinez-Morales' denials in her deposition, she was in fact well aware of his KCOCR complaint of racial discrimination before her review of his RSIT application. Martinez-Morales' mindset in automatically rejecting Brown's application with no opportunity for him to supply the allegedly missing information or take the skills test qualifying candidates for advancement is for the jury to decide, and Brown believes that given the fact pattern at hand, they will find in his favor that his formal and informal complaints of racial discrimination 'tipped the scales' in King County's repeated rejections of his applications for promotion.

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

C.   **Evidence Demonstrating a Pattern of Racial Discrimination and Retaliation by the Testimony of Other Employees is Admissible to Show Intent to Discriminate by Defendants.**

It is well settled that federal courts admit both direct and circumstantial evidence of discrimination to prove discrimination against a plaintiff on a specific occasion.   *Int'l Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, n.44, (1977); *see also*, *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714-17 (1983).   In ruling that this Court improperly excluded co-worker testimony regarding racial discrimination occurring at Amtrak in *Morgan v. Nat'l R.R. Passenger Corp.,* 232 F.3d 1008 (9th Cir. 2000) (reversed on other grounds by *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002)), the Ninth Circuit stated:

> We note that one of the main issues in a hostile environment or discrimination case is the pervasiveness of the conduct at issue.  In this case, the district court excluded significant pieces of information regarding such environment, specifically portions of [Plaintiff] Morgan and Fontaine's testimony and the whole of George's testimony.   This testimony went to the overall environment at the Yard. 232 F.3d 1008, 1017-18 (9th Cir. 2000) (citing *Heyne v. Caruso*, 69 F.3d 1475, 1479 (9th Cir. 1995), and *Spulak v. K Mart Corp.,* 894 F.2d 1150, 1156 (10th Cir. 1990)).

In considering these evidentiary issues, the Ninth Circuit has commented that a plaintiff in a discrimination suit faces the difficult task of proving the employer's intent or state of mind. Sophisticated employers rarely admit an illegal intent and, as one court has noted, "because it is so easy to concoct a plausible reason for [an adverse employment action] . . . [a] plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled by evidentiary rulings that keep out probative evidence because of crabbed notions of relevance or excessive mistrust of juries." *Estes v. Dick Smith Ford, Inc.,* 856 F.2d 1097, 1103 (8th Cir. 1988) (cited with approval in *Heyne,* 69 F.3d at 1480).

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

1      Given the difficulty in proving an employer's unstated motive, courts give latitude to a

2  plaintiff who relies on circumstantial evidence.  In *Estes*, the court of appeals found reversible

3  error from the exclusion of the other employees who also perceived discrimination.  The *Estes*

4  court observed that a wholesale exclusion of such evidence "can be especially damaging in

5  employment discrimination cases, in which plaintiffs must face the difficult task of persuading

6  the fact-finder to disbelieve an employer's account of its own motives."  856 F.2d at 1103.

> [C]ircumstantial proof of discrimination typically includes
> unflattering testimony about the employer's history and work
> practices—evidence which in other kinds of cases may well
> unfairly prejudice the jury against the defendant. In discrimination
> cases, however, such background evidence may be critical for the
> jury's assessment of whether a given employer was more likely
> than not to have acted from an unlawful motive. *Id.*

11      The Ninth Circuit relied on *Estes* in the seminal case of *Heyne v. Caruso,* 69 F.3d 1475

12  (9th Cir. 1995). which remains the leading Ninth Circuit case on this issue.  In *Heyne*, the court

13  reversed exclusion of other employees who were offered to testify that they also experienced

14  discrimination (and harassment) while working for the employer-defendant.  The *Heyne* court

15  recognized that "an employer's conduct tending to demonstrate hostility towards a certain group

16  is both relevant and admissible."  *Id.*, 69 F.3d at 1479. The court observed that although the

17  employer's alleged unlawful action toward other female employees could not be used by the

18  plaintiff to prove that bad character in general, it was admissible to prove his motive or intent in

19  discharging the plaintiff.  If the plaintiff could show that the employer sexually harassed other

20  employees, such evidence would be relative and probative of his general disrespect and sexual

21  objectification of his female employees, and such an attitude is relevant to the issue of his motive

22  for firing the plaintiff.  *Id.* at 1480.  The probative value of the evidence is especially high

23  because of the difficulty of proving the employer's state of mind, and one of the main issues in a

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

1    hostile environment or discrimination claim is the pervasiveness of the conduct at issue.  The

2    *Heyne* decision referenced other court decisions, and extensively cited *Estes*, in reaching its

3    result.  *Id.* at 1479-80 (also citing *EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 897-98 (1994)

4    (attitude of hostility toward women relevant to motive of gender discrimination in discharging

5    female employee)).

6    The U.S. Supreme Court rejected a Tenth Circuit ruling that evidence of other acts of

7    discrimination should be categorically rejected.  *Sprint/United Mgmt. Co. v. Mendelsohn*, 552

8    U.S. 379 (2008).  The Court framed the issue on appeal as follows: "[W]hether, in an

9    employment discrimination action, the Federal Rules of Evidence require admission of testimony

10   by nonparties alleging discrimination at the hands of persons who played no role in the adverse

11   employment decision challenged by the plaintiff."  *Id.* at 1140. The Court's answer was that

12   admissibility depends on a number of factors, "including how closely related the evidence is to

13   the plaintiff's circumstances and theory of the case."

14   Federal courts have long recognized that, in the civil employment context, evidence of

15   employer treatment of other employees may be admissible to show motive or intent for

16   harassment or discharge; it is not impermissible character evidence. See, e.g., *Spulak v. K Mart*

17   *Corp.,* 894 F.2d 1150, 1156 (10th Cir. 1990) (age discrimination); *Coletti v. Cudd Pressure*

18   *Control,* 165 F.3d 767, 776-77 (10th Cir. 1999) (retaliation); *Heyne v. Caruso,* 69 F.3d 1475,

19   1479-80 (9th Cir. 1995) (sexual harassment); *Ansell v. Green Acres Contracting Co*., 347 F.3d

20   515, 523-24 (3d Cir. 2003) (evidence of favorable treatment of person in same class).

21   Washington case law similarly supports the inclusion of circumstantial evidence in

22   employment discrimination cases. While King County may complain that some of the

23   information provided here, particularly about the racial discrimination Brown's coworkers

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

endured, is inadmissible "hearsay", plaintiff does not agree with such assertions. See *Lamon v. McDonnell Douglas Corp.*, 91 Wn. 2d 345, 352, 855 P.2d 1346 (1979); *Mithoug v. Apollo Radio of Spokane*, 128 Wn. 2d 460, 463, 900 P.2d 261 (1996). Hearsay is often an improper objection in employment discrimination cases because the relevant inquiry is the employer's state of mind. See *Hollingsworth v. Washington Mutual*, 37 Wn. App. 386, 681 P.2d 845 (1984). Further, naturally the existence of derogatory conduct and comments within the work environment are directly relevant to plaintiff's emotional damages and the impact of such an environment on the employee when assessing whether or not the employment under the totality of the circumstances was sufficiently "hostile" to be actionable. See *Henderson v. Tyrrell*, 80 Wn. App. 592, 620, 910 P.2d522 (1996) (Under "statement" if offered to show the effect on the listener regardless of the truth is not hearsay if the listener's state of mind is relative to some material fact); see also *MacDonald v. Korum Ford*, 80 Wn. App. 877, 885-86, 92 P.2d 1052 (1996) (Workplace conduct is measured by both the subjective and objective tests in light of the totality of the circumstances); see also *Robel v. Roundup Corp.*, 103 Wn. App. 75, 86, 10 P.3d 1104 (2002), aff'd in part and rev'd in part, *Robel v. Roundup Corp.*, 148 Wn. 2d 35, 59 P.3d 611 (2002) (When a decision-making process is used and where individuals rely on input from another, if there is any discriminatory animus in that process, liability may attach).

In the present case, evidence of defendant's general treatment of other employees of color, as well as evidence of retaliation for filing racial complaints, must be admitted as part of establishing defendant's motive or intent of racial harassment and discrimination toward plaintiff. Further, admitting evidence of discrimination and harassment of other employees at the employer's workplace will not unfairly prejudice defendant.

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

### D.      Plaintiff is entitled to an award of damages and attorneys' fees

Compensatory damages may include emotional distress and humiliation as well as out-of-pocket costs.

Plaintiff is similarly entitled to compensatory and punitive damages under the WLAD. Plaintiff will testify about his damages, including the difference in pay he would have received had he been rightfully granted the promotion he was unlawfully denied. As to the claim for emotional harm damages, plaintiff will testify about non-medical damages. Medical testimony is not required to obtain noneconomic damages under the WLAD: "'The plaintiff, once having proved discrimination, is only required to offer proof of actual anguish or emotional distress in order have those damages included in recoverable costs pursuant to RCW 49.60.'" *Bunch v. King Cnty. Dep't of Youth Servs.*, 155 Wn.2d 165, 180, 116 P.3d 381 (2005) (quoting *Dean v. Municipality of Metro. Seattle–Metro*, 104 Wn.2d 627, 641, 708 P.2d 393 (1985)). The Supreme Court has held that, "[t]he distress need not be severe" for the plaintiff to recover and that "the evidence of emotional distress is limited, but it is sufficient to support an award of noneconomic damages. Bunch testified that he was overwhelmed by the discrimination, and that he was depressed and angry." *Id.* The Court noted that "he had to explain to his family why he was fired" and "all of these facts provide a basis from which the jury could infer emotional distress." *Id.* $260,000 in noneconomic compensatory damages were awarded to Bunch without medical testimony or records, as affirmed by the Court. *Id.* Compensatory damages may include such injuries as "personal humiliation, mental anguish, and suffering." *Memphis Community School Dist. v. Stachura,* 477 U.S. 299 (1986) (quoting *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350, (1974)).

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

Defendant caused plaintiff to suffer humiliation, mental anguish, anxiety, mortification, loss of good health, and emotional and physical distress for which damages will be sought.

## CONCLUSION

For the foregoing reasons, plaintiff asks this Court to enter a judgment in his favor and award meaningful damages to remedy the harm defendant has caused him.

DATED: This 28th day of May, 2021.

CIVIL RIGHTS JUSTICE CENTER, PLLC

*/s/ Darryl Parker*

**Darryl Parker**, WSBA #30770
Attorney for Plaintiff

PLAINTIFF'S TRIAL BRIEF - 17
No. 2:16-CV-01340-TSZ

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

**CERTIFICATE OF SERVICE**

I, Krithi Basu, under penalty of perjury under the laws of the State of Washington, declare as follows:

I am a legal assistant at the Civil Rights Justice Center, PLLC, and am over the age of 18. On the date in the manner indicated below, I caused the foregoing PLAINTIFF'S TRIAL BRIEF and this CERTIFICATE OF SERVICE to be electronically filed with the Clerk of the Court using CM/ECF system which will send notification of the filing to all counsel of record.

DATED this 28th day of May, 2021, at Seattle, Washington.

_/s/ Krithi Basu_____
**Krithi Basu,** Legal Assistant

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183